## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Unicolors, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-CV-2987 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| SHEWIN Flagship Shops, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Unicolors, Inc. ("Unicolors"), accuses defendant Shewin Flagship Shops ("Shewin") of selling dresses bearing designs that infringe its copyrighted fabric floral pattern designs. Shewin offers the allegedly infringing apparel for sale on its Amazon.com store. *See* Second Am. Compl. ("SAC") ¶¶ 25–46, ECF No. 28. Two motions filed by Shewin are before the court. First, Shewin moves to quash a third-party subpoena ("the subpoena") dated September 24, 2024, issued by Unicolors to Amazon.com, Inc. ("Amazon"). Shewin contends that the subpoena seeks production of its customer information, which is allegedly protected by trade secret law. *See* Mot. to Quash 2–4, ECF No. 74. Shewin separately moves to dissolve the preliminary injunction and to dismiss the second amended complaint for lack of personal jurisdiction. ECF No. 57. For the reasons that follow, the court concludes that Shewin lacks standing to move to quash the third-party subpoena because it has not shown that its customer information qualifies as a trade secret. The court also grants Shewin's motion to dismiss the second amended complaint for lack of personal jurisdiction and dissolves the preliminary injunction for want of personal jurisdiction.

## I. Procedural Background

Unicolors initially brought this suit as a "Schedule A" case against 65 defendants. Orig. Sched. A, ECF No. 3. On May 15, 2024, this court ruled in this and three consolidated cases that Unicolors had not demonstrated that defendants were properly joined under Federal Rule of Civil Procedure 20(a)(2). *Bailie, et al. v. Defs. Listed on Sched. A*, 2024 WL 2209698. This court

ordered the plaintiffs "to amend their complaints to eliminate all improperly joined defendants." *Id.* at *6. Unicolors filed an amended complaint naming Shewin as the sole defendant. ECF No. 20 & Ex. A.

Unicolors then moved *ex parte* for a temporary restraining order freezing Shewin's assets. ECF No. 22. The court denied Unicolors' first motion for a temporary restraining order on June 4, 2024, holding that Unicolors had not shown that it had some likelihood of success on the merits or that it was likely to suffer irreparable harm absent a temporary restraining order. 2024 WL 3549568, at *1–2. Unicolors filed its live, second amended complaint on June 18, 2024, and renewed its *ex parte* motion for a temporary restraining order the same day. SAC, ECF No. 28; Renewed Mot. TRO, ECF No. 29. This court granted the renewed motion and set a preliminary injunction hearing, which was continued on Unicolors' motion, once for 14 days. ECF No 35. When it extended the temporary restraining order on July 2, 2024, the court entered minutes stating in part: "Unless a hearing is requested by 10:30 a.m. on 7/17/24, the court will rule on the papers. . . . Plaintiff must serve this order in the manner specified in the temporary restraining order." Min. Entry 1 (July 2, 2024), ECF No. 34. The accompanying order, which was prepared by Unicolors' counsel, did not include language advising Shewin of its deadline to respond to the then-anticipated motion for preliminary injunction. *See* ECF No. 35 at 1.

On Sunday, July 14, 2024, Unicolors filed a motion for preliminary injunction. ECF No. 41. While that motion was pending, two attorneys filed separate notices of appearance for Shewin on July 15, 2024. ECF Nos. 42, 43. Shewin did not object to, or request a hearing on, Unicolors' motion for preliminary injunction. In its briefing on the pending motions, Shewin represents that although it was served with the preliminary injunction motion, Unicolors did not serve it with the minute order of July 2, 2024, ECF No. 34, giving it until July 17, 2024, to request a hearing on the motion for preliminary injunction. *See* Mem. Supp. Mot. to Dissolve and Dismiss 10–11, ECF No. 58. That deadline passed, and having heard no objection from Shewin, the court granted Unicolors' motion for preliminary injunction on July 18, 2024. *See* Prelim. Inj., ECF No. 48.

2

Among other relief, the preliminary injunction froze Shewin's financial accounts until the conclusion of this case to preserve Unicolors' right to the equitable remedy of an accounting of profits from infringing sales. *See id.* ¶¶ 2, 6. The preliminary injunction also authorized Unicolors to propound limited discovery to Amazon as follows:

> 4. Upon Unicolors' request, Defendants and any third party with actual notice of this Order who is providing services for any of Defendants, or in connection with any of Defendants' Online Marketplaces, including, without limitation, any online marketplace platforms such as . . . Amazon.com, Inc. . . . (collectively, the "Third Party Providers"), shall, within seven (7) calendar days after receipt of such notice, provide to Unicolors expedited discovery, limited to copies of documents and records in such person's or entity's possession or control sufficient to determine:

> a. the identities and locations of Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them, including all known contact information and all associated e-mail addresses;

> b. the nature of Defendants' operations and all associated sales, methods of payment for services, and financial information, including, without limitation, identifying information associated with the Online Marketplaces and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Online Marketplaces;

*Id.* ¶ 4.

Over the next two months, Shewin sought and obtained two extensions of its deadline to answer the SAC based on representations that the parties were attempting to settle the case. *See* ECF Nos. 49, 53; *see also* Status Report 1 (Sept. 11, 2024), ECF No. 55. On September 17, 2024, Shewin filed its pending motion to dissolve the preliminary injunction and to dismiss this case for lack of personal jurisdiction. ECF No. 57. The next day, Unicolors served Amazon with the subpoena at issue. Decl. of T. Barrett 1, ECF No. 82-1 Ex.1. The subpoena commands Amazon to produce documents sufficient to establish: (i) all "sales history of the accused products," including their shipment delivery locations; (ii) "destinations of all [accused products]" sold by Shewin; and (iii) "the location in which each purchaser . . . purchased [accused products]." *Id.* Ex. A at 2–3.

Shewin filed its emergency motion to quash on October 2, 2024. ECF No. 74. Presumably, the motion was captioned as an emergency because Shewin alleged that the subpoena sought documents disclosing its trade secrets. *See id.* at 1. On October 3, 2024, this

court administratively stayed the subpoena and set an expedited briefing schedule on the motion to quash. *See* Min. Entry, ECF No. 75. Both pending motions have been fully briefed. *See* Mot. to Quash, ECF No. 74; Mem. Opp'n Mot. to Quash, ECF No. 81; Reply Supp. Mot. to Quash, ECF No. 83; Mot. to Dissolve and Dismiss ("MTD"), ECF No. 57; Mem. Opp'n MTD, ECF No. 76; Reply Supp. MTD, ECF No. 84.

## II. Motion to Quash

"Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013) (quoting *Kessel v. Cook Cnty.*, 2002 WL 398506, at *1–2, (N.D. Ill. Mar. 13, 2002)). Examples of interests that have been held to confer standing to challenge a third-party subpoena include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Id.* at 187 (collecting cases).

Shewin contends that it has third-party standing because it has a personal interest in protecting its alleged trade secrets. *See* Mot. to Quash 2–3. Specifically, it objects to the subpoena's command to produce "customer-specific information related to the names, addresses, and other contact information for customers of Defendant's products." *Id.* at 3.

The court has no trouble concluding that an adequately supported claim of trade secret protection confers third-party standing because Federal Rule of Civil Procedure 45 requires courts to issue an order quashing or modifying a subpoena "[t]o protect a person subject to or affected by a subpoena" if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i) (internal numbering and some punctuation omitted).

Nevertheless, to show third-party standing, Unicolors must do more than invoke trade secret protections in a talismanic manner. The moving party must "first assert a personal right or privilege and then establish that the material it seeks to protect falls into one of the permitted

categories under Rule 45." *Soto v. Kale Realty, LLC*, 2016 WL 11953040, at *2 (N.D. Ill. July 25, 2016). This requirement that the moving party establish the elements of a trade secret flows from the general rule that the party moving to quash under Rule 45 bears the burden to show that the subpoena should be quashed or modified. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (citing *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 380 (S.D. Ind. 1994); *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.,* 2023 WL 2974083, at *1 (N.D. Ill. Apr. 17, 2023)).

The question therefore becomes: has Shewin carried its burden to show that the customer information Unicolors seeks is entitled to trade secret protection? *See Soto*, 2016 WL 11953040, at *2–3. The parties have not briefed choice of law. Assuming without deciding that Illinois law applies, the party seeking trade secret protection for information must establish that "(1) 'the owner . . . has taken reasonable measures to keep such information secret' and (2) 'the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021) (quoting 765 Ill. Comp. Stat. § 1065/2(d); other citation omitted). Whether information qualifies as a trade secret is a question of fact that "requires an ad hoc evaluation of all the surrounding circumstances." *Id.* (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003)). Because the facts drive the trade secret analysis, a company's customer list does not automatically receive trade secret protection. *See, e.g., Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005).

In its motion to quash, Shewin asserts in a conclusory manner that its customer information is entitled to trade secret protection. *See* Mot. to Quash 2–3. It does not explain what, if any, steps it took to maintain the secrecy of its customer information, and it does not explain why its customer information derives independent economic value from not being generally known. *See id.* For example, there is no indication that Shewin took any steps to prevent Amazon from disclosing its customer information, such as including a confidentiality

clause in its contract with Amazon. *See id.* Shewin's "Mere assertions [of trade secret protection] unsupported by specific contentions are not enough" to carry its burden to show that it has standing to move to quash this third-party subpoena.[1] *Soto*, 2016 WL 11953040, at *3 (quoting *JAK Prods., Inc. v. Bayer*, 2015 WL 2452986, at *7 (N.D. Ill. May 22, 2015)). Because Shewin has not carried its burden to show that it has third-party standing, the court does not reach its argument that the subpoena exceeds the scope of discovery authorized by the preliminary injunction.

### III. Personal Jurisdiction

The parties agree that Shewin is domiciled in China. SAC ¶ 19; Mem. Supp. MTD 8. They disagree about whether, as Unicolors contends, the SAC and the evidence Unicolors submitted in support of its motion for preliminary injunction together make out a *prima facie* case of personal jurisdiction. Mem. Opp'n MTD 1–3.

#### A. Personal Jurisdiction Principles

Federal Rule of Civil Procedure 4(k) specifies the conditions under which serving a summons or filing a waiver of service of process establishes personal jurisdiction in a federal district court. Rule 4(k)(1) sets out the general rule that service in accordance with Rule 4 "establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A) (internal numbering omitted). Rule 4(k)(1)(C) covers a situation in which a federal statute authorizes nationwide service of process, permitting the court to exercise personal jurisdiction "when authorized by a federal statute." And Rule 4(k)(2) governs when a federal claim falls outside state court jurisdiction. Rule 4(k)(2) permits the court to exercise personal jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

---

[1] In its reply, Shewin briefly attempts to show that both elements of the trade secret test are satisfied. *See* Reply Supp. Mot. to Quash at 2–4, ECF No. 83. By waiting until its reply brief to attempt to develop an argument for trade secret protection, Shewin has waived its arguments. "[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 1046 (2024) (quoting *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)).

exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The primary difference is that Rule 4(k)(1) "pulls in state law limits on personal jurisdiction," such as the state's long arm statute, while Rule 4(k)(2) does not import those limits. *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 726 (7th Cir. 2024) (citing *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 402 (6th Cir. 2021)); *see also Myer ex rel. B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 860 (7th Cir. 2024).

Unicolors' claims arise under the Copyright Act, a federal statute. SAC ¶¶ 47–59. The Copyright Act does not authorize nationwide service of process, so Rule 4(k)(1)(C) does not apply. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997). Whether Rule 4(k)(1)(A) or 4(k)(2) applies depends on whether Shewin is subject to jurisdiction in the court of any other state. If the defendants in a federal question case such as this one are subject to general jurisdiction in the courts of another state, then the case "may proceed only if [the defendants] also are subject to the jurisdiction of the State of Illinois." *Id.* at 1202. On the other hand, Rule 4(k)(2) governs if the defendants are not subject to personal jurisdiction in any other state. *See id.* at 1201–02.

Unicolors does not dispute that Shewin is domiciled in China, and it does not argue that Shewin is subject to personal jurisdiction in the courts of a state other than Illinois. *Cf. Janmark*, 133 F.3d at 1201–02. Rule 4(k)(2) therefore applies, and the court analyzes whether exercising personal jurisdiction over Shewin comports with the Constitution and laws of the United States.[2]

In its Fourteenth Amendment jurisprudence, the Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,

---

[2] The personal jurisdiction analysis would be the same under Illinois law because Illinois' long arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *GCIU-Employer Retirement Fund v. The Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009); *but see Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (noting that the Illinois Constitution may provide "greater due process protections for nonresident defendants," but neither the Illinois Supreme Court nor the Illinois appellate court has identified any substantive differences (citations omitted)).

592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Unicolors does not argue that this court has general jurisdiction over Shewin, so the court confines its analysis to specific, case-linked jurisdiction.  *See Myer ex rel. B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 860–61 (7th Cir. 2024) (*per curiam*).

"For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice."  *Id.* at 861 (citing *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); other citation omitted).  "Requiring minimum contacts protects the defendant from the burden of litigating in a distant, inconvenient forum, as well as to prevent states from reaching beyond the limits of their sovereignty."  *Id.* (citing *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

### B. The Complaint

As on a Rule 12(b)(6) motion, the court must "'accept as true all well-pleaded factual allegations [in the complaint] and draw all reasonable inferences in favor of the plaintiff' when evaluating personal jurisdiction."  *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022), cert. denied sub nom. *Sheehan v. Breccia Unlimited Co.*, 143 S. Ct. 1750 (2023) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)).  However, when evaluating the complaint, "allegations in the form of legal conclusions are insufficient" and must be disregarded.  *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (citing *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (Rule 12(b)(6) standard)); *see also St. John's United Church*, 502 F.3d at 625 (applying the *Twombly-Iqbal* Rule 12(b)(6) standard when analyzing a Rule 12(b)(2) motion).

Unicolors' second amended complaint contains no more than conclusory allegations that the requisites of specific personal jurisdiction are satisfied.  *See* SAC ¶¶ 9–11, 21.  Unicolors

does not argue that the second amended complaint's conclusory allegations make out a *prima facie case* of specific personal jurisdiction, and the court agrees that they do not. *See* Mem. Opp'n MTD 1–2.

### C. Unicolors' Evidence

To make out its *prima facie* case, Unicolors relies on evidence it submitted at the temporary restraining order stage. It contends that this evidence shows Shewin "offered sales and shipment of" allegedly infringing products to Chicago. *Id.* at 2. Unicolors cites a series of screenshots showing someone shopping on Shewin's Amazon.com store. *See* ECF No. 28-2 Ex. B. The shopper places an allegedly infringing item in their digital shopping cart and sets the potential buyer's "deliver to" location to "Chicago 60604." *See id.*, PageID Nos. 635, 638, 641, 644, 647, 650, 653, 656, 659, 662, 665, 668, 670. The screenshots do not show that any purchase was made or that any product was shipped. *See id.* Nor does Unicolors contend in its briefing that it attempted to purchase any product from Shewin. *See id.*

Unicolors argues that Shewin purposefully availed itself of the protection of Illinois law by listing allegedly infringing products on its website and conveying its willingness to ship those products to Illinois. Contrary to Unicolors' position, the sole case it cites does not hold that such a showing suffices to establish personal jurisdiction. In *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), *cert. denied,* 143 S. Ct. 577 (2023), the plaintiff filed a Lanham Act suit against an Amazon.com seller, alleging infringement of its sports-related trademarks. *See id.* at 617. The defendant, HANWJH, moved to dismiss for lack of personal jurisdiction. The record showed that HANWJH had the following contacts with Illinois: "On September 16, 2020, an investigator for NBA Properties accessed HANWJH's online Amazon store and purchased a pair of shorts. In placing the order, the investigator designated an address in Illinois as the delivery destination. The sale went through, and the product was delivered to the Illinois address on October 6, 2020." *Id.*

The Seventh Circuit held that these contacts established specific personal jurisdiction over the seller. *Id.* at 624–27. Throughout its analysis, the Seventh Circuit emphasized that

HANWJH had shipped the allegedly infringing pair of shorts to Illinois, thereby reaching out to do business in and exploit the Illinois market. *See id.* For instance, the *NBA Properties* court explained why its analysis accorded with two prior decisions holding that personal jurisdiction over defendants who sold and shipped merchandise to people located in Illinois was proper, *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), and *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020):

> In *Curry*, the defendant's actions could be fairly "described as purposeful[ly]" directed where it "created an interactive website and explicitly provided that Illinois residents could purchase its products through that website," "arranged for the sale of its products through third-party websites," "sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address," and then, "shipped [the product] to its customers who were in Illinois."
>
> We see the same purposeful direction here. HANWJH's actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address.

*NBA Props.,* 46 F.4th at 624 (brackets in the original) (citation omitted). The *NBA Properties* court also rejected "a categorical rule that multiple online sales, as opposed to a single online sale, are required to establish a sufficient basis for personal jurisdiction." *Id.* at 625 (citing *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019)).

The facts of *NBA Properties* share a feature common to many of the Seventh Circuit cases the parties cite holding that personal jurisdiction existed over an out-of-state online seller. In nearly every such case, the seller filled an order and shipped goods to an in-state buyer. *See NBA Props.,* 46 F.4th at 617; *Curry,* 949 F.3d at 399; *Hemi*, 622 F.3d at 756; *but see Matlin*, 921 F.3d at 707 (finding no personal jurisdiction, despite evidence that the defendant shipped one allegedly infringing product to Illinois).[3]

---

[3] In the vast majority, if not all, of the many so-called "Schedule A" cases in this district, the plaintiff places one or more test purchases of allegedly infringing products, has them shipped to Illinois, and files evidence of the purchase and shipment. This case therefore differs markedly from the mine run of Schedule A cases in that Unicolors has provided no evidence or allegation of a test purchase or any other purchase of an allegedly infringing product by an Illinois resident.

The only arguable exception is *uBID, Inc. v. GoDaddy Grp. Inc.*, 623 F.3d 421 (7th Cir. 2010), a case about cybersquatting on internet domain names.  The plaintiff, uBid, sued GoDaddy, a seller of internet domain names based in Arizona, in this judicial district.  Rather than selling physical goods to Illinois residents, GoDaddy sold virtual assets, domain names, to Illinois residents.  *See id.* at 423.  GoDaddy also mounted an extensive nationwide advertising campaign, taking steps such as buying time during Super Bowl broadcasts.  *See id.* at 424. Applying *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Seventh Circuit held that the defendant's "extensive marketing in Illinois and sales to Illinois customers, including two who allegedly cyber-squatted on domain names similar to [the plaintiff]'s" satisfied the minimum contacts test.  *Id.* at 427–28.  As in the cases cited in the prior paragraph, GoDaddy's contacts with Illinois included claim-related sales of digital assets (rather than physical goods) to Illinois residents.

Unicolors cites no case finding personal jurisdiction in the absence of at least one claim-related, completed sale to an Illinois resident.  That does not mean that a sale to a buyer in the forum state is invariably necessary or sufficient to create specific personal jurisdiction.  Adopting "[s]uch a categorical rule would be unsound, and such a practice has been discouraged by the Supreme Court."  *NBA Props.*, 46 F.4th at 624 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86 (1985); other citation omitted).  For instance, a federal district court sitting in Wisconsin recently held that a defendant who shipped an allegedly infringing product to another state nevertheless purposely availed itself of the protections of Wisconsin law because the order was placed by a customer with a "bill to" address in Wisconsin.  *Quincy Bioscience, LLC v. BRYK Enters., LLC*, 2023 WL 2933464, at *2–3 (W.D. Wis. Apr. 13, 2023).  "If the defendant makes sales to a customer that it knows is a resident of the forum state," the court reasoned, "it follows that the defendant can reasonably expect to be sued in that state on a claim that arises of out (sic) the sale of the product."  *Id.* at *3.

That analysis, as well as the reasoning of cases such as *NBA Properties*, does not apply in the instant case because Unicolors provides no evidence and does not allege that Shewin has

shipped or offered to ship allegedly infringing products to a person associated with an Illinois address. Unicolors also does not allege that Shewin has marketed its products to Illinois buyers or otherwise attempted to exploit the Illinois market, other than by creating an Amazon.com store. The facts presented in this record therefore differ materially from *uBid*—no marketing campaign targeting, nor purchases made by, Illinois residents. *Compare be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011).

Unicolors has also failed to provide any evidence or allegations shedding light on what steps Shewin took to create its Amazon.com store. That distinguishes *Monster Energy Co. v. Wensheng*, 136 F.Supp.3d 897 (N.D. Ill. 2015). The *Monster Energy* court held that it had personal jurisdiction in a trademark infringement suit over online counterfeiters who offered allegedly infringing goods for sale on their AliExpress stores. The *Monster Energy* plaintiff submitted declarations and other evidence showing that creating an online store on AliExpress required the defendants to "affirmatively select a shipping template to ship their products, including counterfeit Monster Energy Products, to the United States and Illinois." *Id.* at 902. By contrast, this record is bereft of evidence on whether Shewin made any affirmative selections targeting the Illinois market when it created its Amazon.com store.

The record also does not explain the significance of the "deliver to" address being set on Unicolors' screenshots to a Chicago postal code. Does the "deliver to" location signify that Shewin stands ready to ship to Illinois, or does it show only that the buyer is contemplating placing an order and requesting that it be shipped to an Illinois address without knowing whether the seller will agree? If it is the latter, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citation omitted).

The Seventh Circuit has repeatedly warned that "premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of

12

the virtually unlimited accessibility of websites across the country." *Hemi*, 622 F.3d at 760 (quoting *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004)); *accord. Matlin*, 921 F.3d at 706 (citing additional cases). Accordingly, "[a] plaintiff cannot satisfy the [minimum contacts] standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). This means that the plaintiff must do more than show that the defendant operates a website allowing customers from the forum state to place an order. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802–03 (7th Cir. 2014). As explained by the Seventh Circuit a decade ago, "The interactivity of a website is . . . a poor proxy for adequate in-state contacts. . . . Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Id.* at 803.

Viewed in the light most favorable to Unicolors, the record establishes only that Shewin has created an interactive website on Amazon.com to sell its products and that a buyer may set the "deliver to" address to an Illinois postal code. Unicolors offers no limiting principle to guard against the concerns about nearly universal jurisdiction articulated repeatedly in Seventh Circuit case law on internet contacts. Accordingly, Unicolors has not carried its burden to make out a *prima facie* case of personal jurisdiction over Shewin. *See Matlin*, 921 F.3d at 706; *Advanced Tactical*, 751 F.3d at 803; *Mobile Anesthesiologists Chi.*, 623 F.3d at 446; *Hemi*, 622 F.3d at 760.

### D. Leave to Conduct Jurisdictional Discovery

In its response brief, Unicolors requests that it be allowed to conduct jurisdictional discovery if the court finds that it has not made out a *prima facie* case of personal jurisdiction. Seventh Circuit precedent dictates the answer to Unicolors' request: "A plaintiff must be able to establish 'a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.'" *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022), cert. denied sub nom. *Sheehan v.*

*Breccia Unlimited Co.*, 143 S. Ct. 1750 (2023) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000)).

In addition, Shewin represents that it is a resident of China, and even where a *prima facie* case of personal jurisdiction has been made, "foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Id.* at 527 (brackets omitted) (quoting *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009)). Heeding this guidance, Unicolors' request for jurisdictional discovery must be, and is, denied because it has not made out a *prima facie* case of personal jurisdiction over Shewin. *See, e.g.*, *HS Wholesale Ltd. v. HS Glob. Distrib., LLC*, 2024 WL 774910, at *5 (N.D. Ill. Feb. 26, 2024).

### IV. Dissolution or Modification of Preliminary Injunction

Shewin moves to dissolve or modify the preliminary injunction on three grounds. It argues first that it was not properly served with the minute order setting a deadline for it to request a hearing on the motion for preliminary injunction. *See* Mem. Supp. MTD 2–3. Next, Shewin maintains that Unicolors misled the court at the preliminary injunction stage by submitting images of its floral design patterns that differed materially from the images of its copyrighted designs on deposit with the Library of Congress. *See id.* at 10–18. Finally, Shewin contends that the scope of the preliminary injunction's asset freeze is overly broad and unduly burdensome. *See id.* at 8.

The court does not reach any of Shewin's arguments because for a "preliminary injunction to be valid," the district court that issues it must "have personal jurisdiction over the defendant." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007)); *accord. United States v. Kirschenbaum*, 156 F.3d 784, 795 (7th Cir. 1998). In *Advanced Tactical*, the Seventh Circuit held that the plaintiff failed to carry its burden to show that the district court had personal jurisdiction over the defendant. *Id.* at 802–03. The district court had issued a preliminary injunction enjoining the defendant from infringing the plaintiff's

14

trademarks. The Seventh Circuit remanded the case to the district court with "instructions to vacate the preliminary [injunction] and dismiss the complaint for lack of personal jurisdiction." *Id*. at 804. The instant case stands in the same procedural posture. *Advanced Tactical* therefore teaches that the preliminary injunction must be vacated for want of personal jurisdiction, and Unicolors' second amended complaint must be dismissed for the same reason.

### V. Conclusion

For the reasons stated, defendant's motion to quash the subpoena dated September 24, 2024, is denied for want of a showing of third-party standing. Defendant's motion to dismiss the second amended complaint for lack of personal jurisdiction is granted. Because plaintiff has not shown that this court has personal jurisdiction, the preliminary injunction dated July 18, 2024, is dissolved.

In the preliminary injunction, this court found that plaintiff had made a showing of a threat of irreparable injury absent an asset freeze. Accordingly, this order dissolving the preliminary injunction is stayed for seven days to provide plaintiff with an opportunity to determine whether it wishes to appeal and, if so, to file a motion to stay this dissolution order pending appeal. Any motion for stay pending appeal is due on or before October 31, 2024. If a timely motion for stay pending appeal is not filed, the preliminary injunction will be dissolved effective November 1, 2024.

Dated: October 24, 2024                                    /s/ Joan B. Gottschall
                                                           United States District Judge